# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

02 JAN -9 PM 3:13

U.S. ............
N.D. OF ALABAMA

ETTA CHEATOM )
)
    Plaintiff, )
)
v. )    **Case Number: CV-00-B-2214-NW**
)
JIMMY DEAN FOODS )
)
    Defendant. )

**ENTERED**

JAN - 9 2002

## MEMORANDUM OPINION

Currently before the court are Defendant Jimmy Dean Foods' ("defendant" or "Jimmy Dean") Motion for Summary Judgment and Motion to Strike Plaintiff's Untimely Response to Defendant's Summary Judgment Motion. Etta Cheatom, ("plaintiff" or "Cheatom") filed suit alleging that defendant discriminated against her on the basis of race and sex and retaliated against her for filing an EEOC charge in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's motions are due to be granted.[1]

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court and required that counsel send a copy of the proposed opinion to counsel for plaintiff. Although the court has made some minor changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n. 46 (11th Cir. 1997). In this case, the court had reached a firm decision as to the appropriate outcome before requesting a proposed opinion from defendant's counsel and defendant drafted the opinion according to the express instructions of the court as to its contents. The court's clerk checked all record and legal cites. Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion and the opinion reflects the court's own conclusions.

22

# I. FACTUAL SUMMARY

## A.    Background Facts

Defendant Jimmy Dean Foods makes various sausage, breakfast and luncheon products. (White Aff. ¶ 1.)  Plaintiff Etta Cheatom, a black female, began working at Jimmy Dean in 1987 as an assembly worker and is currently employed as a scrapper.  (Pl. Depo. at 17-18.)

During her employment at Jimmy Dean, plaintiff has exhibited an inability to work well with her coworkers.  (Morris Aff. ¶ 2.)  For example, in 1999, plaintiff had an altercation with coworker Towanda Perkins after Perkins asked plaintiff to help her by rotating job duties with her.  (Pl. Depo. at 92-93.)  Around this time period, plaintiff informed her supervisor Dianna Morris that she did not want to work with other employees with whom she was not getting along or with whom she had "bad vibes," such as Perkins.  (Id. at 94-96.)  Morris understood from talking with plaintiff that plaintiff did not wish to work with many of her coworkers based on plaintiff's dislike for them.  (Morris Aff. ¶ 2.)  Additionally, Morris received numerous complaints from plaintiff's coworkers that plaintiff often vocalized her dislike for and her wish not to work with certain coworkers.  (Id.)

## B.    Production Coordinator Job

On June 11, 1999, Jimmy Dean announced the opening of four newly-developed Production Coordinator jobs - two on the day shift and two on the night shift.  (Pl. Depo. at 80; Exh. 4 to Pl. Depo.; White Aff. ¶ 2.)  The Production Coordinator job, a non-supervisory, hourly position, involves working with employees in each production department and in accounting to accurately complete production reporting and employee time/attendance record keeping.  (White Aff. ¶ 2; Exhs. 4, 10 to Pl. Depo.)  The job requires the ability to interact effectively with all

2

levels of employees and management in a professional manner.  (Exh. 10 to Pl. Depo.)  The ability to work well with coworkers is particularly critical to the effective performance of the Production Coordinator job because the job involves completing USDA compliance reports with the assistance of coworkers in addition to taking responsibility for correcting any mistakes made by these coworkers.  (White Aff. ¶ 2.)

After Jimmy Dean posted the Production Coordinator jobs, Human Resources Manager Catherine White, Assistant Human Resources Manager Victor Gipson, and Plant Manager Jim Anthony reviewed the personnel records and employment histories of the employees who applied for the jobs to determine which applicants would be selected for an interview.  (White Aff. ¶ 3.) General Manager Ron Williams approved the selection decisions made by White, Gipson, and Anthony.  (*Id.*)  There were thirty-three total applicants: sixteen black employees, sixteen white employees, and one Hispanic employee.  (*Id.*)  White, Gipson, and Anthony excluded those applicants who lacked the requisite experience, had deficient work records, or who had exhibited poor interpersonal skills.  (*Id.*)  Out of the thirty-three applicants, White, Gipson, and Anthony excluded eleven applicants from the interview process based on one or more of these reasons. (*Id.*)  Six of the eleven candidates rejected were black employees and five were white employees. (*Id.*)

Plaintiff submitted a resume for the job of Production Coordinator.[2]  (Pl. Depo. at 79; Exh. 5 to Pl. Depo.)  White, Gipson and Anthony did not consider plaintiff qualified for the

---

[2]Though plaintiff admits voluntarily leaving her night shift job in 1998 because she is a single parent and did not want to work nights, plaintiff claims that she might have agreed to work the night shift in 1999 if she had been offered one of the two night shift Production Coordinator jobs. (Pl. Depo. at 80, 87-89.)

3

Production Coordinator job because she did not exhibit the interpersonal skills necessary to perform the job in an effective manner. (White Aff. ¶ 4.)  Plaintiff admits that she has had problems working well with at least one coworker, and plaintiff's supervisor had received numerous reports that plaintiff had vocalized her dislike for working alongside a number of coworkers. (Pl. Depo. at 92-96; Morris Aff. ¶ 2; White Aff. ¶ 4.)

After excluding the applicants who were not qualified for the Production Coordinator jobs, White, Gipson, and Anthony, along with Materials Manager Wesley Haddock,  interviewed the remaining twenty-two candidates and determined who would be selected for the Production Coordinator jobs. (White Aff. ¶ 5.) Of the twenty-two candidates selected for an interview, ten were black employees, eleven were white employees, and one was an Hispanic employee. (*Id.*) General Manager Williams and Plant Finance and Logistics Manager LeAnn Aldridge also participated in the selection process. (*Id.*)  White, Gipson, Anthony, and Haddock selected the four individuals they considered best qualified for the Production Coordinator jobs - Angela Phillips, a white female; Jennifer Keeton, a white female; Kris Jones, a black female; and Glenda McDonald, a white female. (Pl. Depo. at 80-81; White Aff. ¶ 5.)  These four individuals were considered best qualified based on their performance in the interview for the Production Coordinator jobs. (White Aff. ¶ 5.)

Plaintiff admits that she has never seen the resumes of the four females selected for the Production Coordinator jobs, but believes that she is more qualified than those females because she has more experience at Jimmy Dean. (Pl. Depo. at 90, 96.)  Plaintiff believes that she should have received the job over the other females, including the black female, who received the jobs. (*Id.* at 129.)

4

C.    **Set-up Work and Plaintiff's Refusal to Perform Assigned Duties**

Beginning at five o'clock a.m., Jimmy Dean employees from each production line prepare

the lines for the start of production. (White Aff. ¶ 6; Pl. Depo. at 44.) This extra hour of work,

referred to as "set-up," entails tasks such as stocking the line with sanitizer and foot mats,

reconfiguring equipment to produce a particular product, wiping the wet equipment dry, and the

"pre-op" of the production lines. (White Aff. ¶ 6.) Pre-op refers to the inspections of the

equipment for cleanliness. (*Id.*) Each set-up crew has an individual assigned to perform the pre-

op tasks and each production line has a back-up person to perform the pre-op tasks in the event

that the person normally performing those tasks is absent. (White Aff. ¶ 6; Pl. Depo. at 45.)

Although the set-up job is voluntary, once an employee has volunteered to work set-up, the

employee is not free to pick and choose which set-up tasks he or she prefers to perform. (*Id.*)

Plaintiff, who was trained and previously had performed pre-op tasks, volunteered to

work set-up. (Pl. Depo. at 44, 46-47.) On June 29, 1999, plaintiff's supervisor, Dianna Morris,

told plaintiff to perform the pre-op tasks for approximately three weeks because one of plaintiff's

coworkers, Towanda Perkins, was taking medical leave to have surgery. (*Id.* at 47.)[3] Plaintiff

refused to perform the pre-op tasks and told Morris that if she had to work pre-op, she would no

longer agree to work set-up. (*Id.*)

According to plaintiff, Morris "threatened" her by telling plaintiff that she would perform

the pre-op tasks and by making the comment that "in the state of Alabama we can do whatever

we want to you." (Pl. Depo. at 48.) Plaintiff responded that Morris could not make her "do a

voluntary job." (*Id.* at 48, 54.) Plaintiff believes that Morris wanted to have another coworker,

---

[3]Perkins did in fact take a medical leave of absence. (Pl. Depo. at 52-53.)

Sherry McCroskey, a black female, perform plaintiff's set-up duties while plaintiff performed the pre-op tasks. (*Id.* at 43, 53, 125.) Unlike plaintiff, McCroskey was not trained on pre-op. (*Id.*)

Plaintiff claims that Morris assigned plaintiff pre-op duties because Morris was angry with her because she had participated in an internal investigation of a complaint against Morris by Melissa Williams, a black female, in May 1999. (Pl. Depo. at 48-50.) Williams complained to Human Resources about Morris's management style, but did not file an EEOC charge or a lawsuit. (White Aff. ¶ 9.) Plaintiff testified that she informed Human Resources during the investigation into Williams's complaint that she thought that Morris discriminated against black employees by always assigning black employees pre-op duties. (Pl. Depo. at 49.) However, plaintiff admits that both white and black employees have been assigned pre-op because Morris "eventually started making them do it." (*Id.* at 51-52.)

The day after plaintiff refused to perform the pre-op tasks, then-Acting Superintendent Dale Landers met with plaintiff to discuss plaintiff's refusal to do the pre-op job as her supervisor had instructed. (Pl. Depo. at 55.) Landers and plaintiff then went to Jimmy Dean's Department of Human Resources and met with White, Gipson, and Morris. (*Id.* at 56.) During the meeting, White explained to plaintiff that if she refused to perform the pre-op job duties as instructed by her supervisor, plaintiff was refusing to work. (*Id.* at 62.) Plaintiff insisted that she was not refusing to work because set-up was a voluntary job and repeated that she could not be made to perform a voluntary job.[4] (*Id.* at 56, 62, 133.)

---

[4]Although Plaintiff claims that she has heard of other employees stating that they would not perform pre-op duties, plaintiff admits that she is not aware of any other employees who refused to perform a job that their supervisor assigned them. (Pl. Depo. at 56-58, 61-62.)

Plaintiff did not receive a written warning as a result of the meeting in Human Resources and per her request, was removed from set-up duties. (Pl. Depo. at 64.)  Though she acknowledges that she requested to be removed from set-up duties, plaintiff claims that she lost money when she was released from these duties.  (*Id.* at 158.)

**D.    Plaintiff's Comment to Dianna Morris**

On the same day that plaintiff refused to perform the pre-op duties, plaintiff stated in the presence of Supervisor Jim Coleman that "if she [Dianna Morris] thinks she's got problems now, she hasn't seen problems." (Pl. Depo. at 65-66; White Aff. ¶ 7.)  Coleman reported plaintiff's statement to White, who had Coleman provide her with a written statement documenting plaintiff's comment. (White Aff. ¶ 7; Exh. A to White Aff.)  White confronted plaintiff about plaintiff's comment, and plaintiff denied making a threat to Morris. (Pl. Depo. at 67, 71-72.) Later, plaintiff admitted making the statement, but claimed that she did not intend any harm to Morris.  (*Id.* at 67.)  Plaintiff testified in her deposition that she merely intended to report to Human Resources that Morris was requiring her to perform pre-op duties.  (*Id.*)  Though she claims that this was her intent, plaintiff admits that she never went to Human Resources to report Morris's requirement.  (*Id.* at 70.)

On July 1, 1999, plaintiff received a warning for what management considered a verbal threat against Supervisor Morris. (Pl. Depo. at 72; Exh. 3 to Pl. Depo.)  When issuing the warning, White informed plaintiff that making threatening statements was a terminable offense. (*Id.* at 74-76; Exh. 3 to Pl. Depo.)  However, at the time, plaintiff was not terminated and did not receive a reduction in pay.  (*Id.* at 76.)  Plaintiff was transferred to a cooker job in a different department so that Morris would no longer have to work with her.  (*Id.* at 76-77.)  Plaintiff has

7

no complaints about transferring to the job of cooker as a result of the incident with Morris.  (*Id.* at 77, 79, 146-47.)

**E.     Overtime Work**

On July 29, 1999, plaintiff asked Production Supervisor Dwight Hubbard,[5] if she could work overtime on Sunday, August 8, 1999, when she returned from her vacation.  (Pl. Depo. at 107-108.)  Hubbard told plaintiff that he did not know whether that was allowed, but that he would get back with plaintiff.  (*Id.*)  Hubbard forgot to get back with plaintiff and on August 9, 1999, plaintiff learned that she was not called in to work although overtime was available on August 8, 1999.  (*Id.* at 108; Exh. 8 to Pl. Depo.)  After learning that she was not allowed to work overtime that day, plaintiff complained to White in a written memo.  (*Id.*)  In the memo, plaintiff requested that Jimmy Dean pay her for that day that she was not allowed to work overtime.  (Exh. 8 to Pl. Depo.)

After receiving plaintiff's memo, White spoke to Hubbard about plaintiff's overtime request and then gave plaintiff a written memo explaining that plaintiff's not being allowed to work overtime was nothing more than an oversight and that Hubbard simply forgot to get back with plaintiff and add her name to the weekend list.  (White Aff. ¶ 8; Pl. Depo. at 104, 108, 109; Exh. 9 to Pl. Depo.)  White further explained that one employee in the past was compensated for being overlooked for weekend overtime, but that after the employee was paid, it was brought to White's attention that it was not Jimmy Dean's policy to pay employees for oversights such as these.  (*Id.*)  White also noted that since the time that the one employee was paid for an oversight,

_____

[5]There is no evidence that Hubbard knew that plaintiff filed an EEOC charge in October 1998.

other employees were overlooked by other supervisors and none of these employees were compensated for the mistakes. (*Id.*)

In March of 2001, plaintiff claims that she asked Supervisor James Willcut,[6] about working overtime in the maintenance department. (Pl. Depo. at 110-11.) Willcut told plaintiff that he would have to check with another supervisor about the paperwork he would need to complete because plaintiff did not normally work in maintenance. (*Id.*) Plaintiff then had her Supervisor, Lisa Granville, call Willcut to explain that no additional paperwork was necessary; however, by that time, Willcut no longer needed plaintiff's assistance. (*Id.* at 112-13.) Plaintiff complained to Gipson about not being allowed to work overtime in maintenance. (*Id.* at 116-17.) Gipson explained to plaintiff that the maintenance department was supposed to post a volunteer list and that the situation should not happen again. (*Id.*) Plaintiff admits that both black and white employees have complained about not being allowed to work overtime in maintenance. (*Id.* at 119-20.)

## F.    Plaintiff's October 1999 Successful Job Bid

Plaintiff was involved in an automobile accident in August 1999. (Pl. Depo. at 19-20.) At that time, plaintiff worked as a cooker earning $9.50 per hour. (*Id.* at 18-19, 78.) After the accident, the job of scrapper became available and plaintiff successfully bid on the job. (*Id.* at 78.) Plaintiff claims that the scrapper job duties are easier to perform. (*Id.* at 19-20.) In October of 1999, plaintiff began working as a scrapper earning $9.60 per hour and she has no complaints about her promotion to this job. (*Id.* at 18, 79, 146-47.)

---

[6]There is no evidence that Willcut knew that plaintiff had filed EEOC charges in October 1998 or in July 1999.

9

### G.     Alleged Conduct by Dianna Morris and Human Resources Department

Plaintiff alleges that her former supervisor Dianna Morris harassed her in retaliation for

filing an EEOC charge by placing her in what plaintiff characterizes as "odd jobs." (Pl. Depo. at

36-37.)  As an example, plaintiff claims that on one occasion in1999, Morris assigned her to a

job for approximately one hour that hurt plaintiff's arm.  (*Id.* at 38.)  Although Morris "didn't

want to," she finally  removed plaintiff from the job after plaintiff went to see a nurse.  (*Id.*)

Beginning in May of 1999, plaintiff claims that Morris moved plaintiff between three and fifteen

times from one production line to another when Morris needed plaintiff to work at these different

lines.  (*Id.* at 39-40, 42-43.)  Plaintiff acknowledged that Morris also moved other employees

from one line to another.  (*Id.* at 41-42.)  Performing different job duties is expected of all Jimmy

Dean employees.  (White Aff. ¶ 6.)  Plaintiff also claims that Morris retaliated against her when

Morris asked one of plaintiff's coworkers whether plaintiff had upset her.  (*Id.* at 125-27.)

Plaintiff claims that White harassed and retaliated against her when White counted

plaintiff absent from work after plaintiff missed one day of work to attend court-ordered

mediation in connection with her first lawsuit against Jimmy Dean.  (Pl. Depo. at 37, 152.)

Plaintiff believes that she should have been given perfect attendance though she did not work that

day.  (*Id.* at 152.)  Plaintiff had no points counted against her for attending court-ordered

mediation; however, because she missed a day of work she became ineligible to receive a perfect

attendance award for the year 2000.  (White Aff. ¶ 10.)  All other employees missing work for

court-ordered activity are treated the same way and are ineligible to receive a perfect attendance

award.  (*Id.*)  Other than counting plaintiff absent from a day of work she missed, the only way

plaintiff recalls that White or anyone in the Human Resources department retaliated or

discriminated against her was by denying her an interview for the Production Coordinator job. (*Id.* at 154-55.)

## H.    Plaintiff's EEOC Charges and Lawsuits

Plaintiff filed a related case in December 1999 against Jimmy Dean, Case No. CV-99-B-3271-NW.  On June 1, 2001, the court granted defendant's motion for summary judgment on all of plaintiff's claims.  Prior to filing her lawsuit in December of 1999, plaintiff filed an EEOC charge in October 1998.  (Complaint ¶ 11.)

Plaintiff filed a second EEOC charge on July 26, 1999, and the copy of this charge identified by plaintiff is not signed by plaintiff, sworn to under oath by plaintiff, or affirmed by plaintiff.  (Pl. Depo. at 29-30; 101-02; Exhs. 2, 6 to Pl. Depo.)  The only copy of plaintiff's July 26, 1999, EEOC charge received by Jimmy Dean was not signed by plaintiff, sworn to under oath by plaintiff, or affirmed by plaintiff.  (White Aff. ¶ 11.)  The EEOC issued a Notice of Right to Sue upon request on May 8, 2000.  (Pl. Depo. at 102; Exh. 7 to Pl. Depo.)

## I.    Plaintiff's Claims

Plaintiff filed this lawsuit on August 9, 2000, alleging that Jimmy Dean discriminated against her on the basis of race, sex and in retaliation for filing an EEOC charge when it denied her an interview for the job of Production Coordinator.  (Complaint ¶ 19; Pl. Depo. at 37, 79, 90, 100, 121-22, 128-29.)  Plaintiff also claims that Jimmy Dean retaliated against her for filing an EEOC charge by (1) moving her from one production line to another, (2) attempting to make her perform pre-op duties, (3) reprimanding her for making a threat to a supervisor, (4) denying her overtime work, and (5) not awarding her perfect attendance after she missed a day of work. (Complaint ¶ 19.)

11

## II. <u>DEFENDANT'S MOTION TO STRIKE</u>

In accordance with the court's Scheduling Order, Jimmy Dean filed Defendant's Motion for Summary Judgment and supporting evidentiary materials on June 1, 2001. (*See* Scheduling Order entered January 16, 2001, at ¶ 11.) In the Scheduling Order, the court ordered plaintiff to file her evidentiary materials in opposition to defendant's Motion for Summary Judgment and to submit her brief in opposition to such motion within twenty-one days after the filing of the Motion for Summary Judgment. (*See id.* at Ex. A, ¶ A2.) Thus, plaintiff's evidentiary materials and brief in opposition were due by June 22, 2001.

Cheatom did not file or submit her brief in opposition to defendant's Motion for Summary Judgment and supporting evidentiary materials until June 26, 2001, four days after the court-ordered deadline. At oral argument, plaintiff's counsel stated that she believed she had three additional days because she did not receive defendant's motion until June 4, 2001. Rule 6(e) of the Federal Rules of Civil Procedure provides:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

Even including the three additional days to the prescribed period in which plaintiff had to file her response to defendant's Motion for Summary Judgment, plaintiff's response is untimely. To timely file a response within twenty-one days of service of defendant's Motion, plaintiff was required to file the response on June 25, 2001, (i.e. twenty-one days from June 4, 2001, rather than June 1, 2001). Plaintiff did not file or submit her brief in opposition to defendant's Motion for Summary Judgment until June 26, 2001, one day after the court-ordered deadline.

12

Plaintiff argues that her response is timely based on Federal Rule of Civil Procedure Rule 5 because she mailed the response to the court on June 25, 2001. (*See* Plaintiff's Response to Motion to Strike.) Plaintiff misunderstands Rule 5 which provides that service by mail *upon opposing attorneys* is complete upon mailing. Fed. R. Civ. P. 5 (b) (emphasis added). However, with respect to filing with a court, Rule 5(e), provides in pertinent part, "[t]he filing of papers with the court as required by these rules *shall be made by filing them with the clerk of court*." Fed. R. Civ. P. 5(e) (emphasis added). Although plaintiff's counsel mailed the response on June 25, 2001, the response was not actually filed with the court until June 26, 2001, one day after the court-ordered deadline. Therefore, plaintiff's response is due to be stricken because it is untimely.

In making this determination, the court takes into consideration the fact that just three weeks before plaintiff's submission was due in this second lawsuit, the court had issued a Memorandum Opinion in plaintiff's first lawsuit against Jimmy Dean making unmistakably clear that plaintiff's counsel should have filed the response with the court within twenty-one days of the receipt of defendant's motion for summary judgment. On June 1, 2001, the court entered a Memorandum Opinion in plaintiff's first case against Jimmy Dean, CV-99-B-3271-NW, wherein the court struck plaintiff's response to defendant's motion for summary judgment as untimely. In that Memorandum Opinion, the court made clear that the Scheduling Order required plaintiff to *file* her response within twenty-one days of the defendant's filing of the motion for summary judgment. Despite this reminder, plaintiff failed to timely file her response to defendant's motion in this case.

In the Scheduling Order, the court also ordered plaintiff not to delay service of copies of her summary judgment materials. (*See* Scheduling Order entered January 16, 2001, at Ex. A, ¶ A2.) Although the certificate of service attached to plaintiff's brief indicated that the brief was served on defendant's counsel on June 25, 2001, counsel for defendant did not receive a copy of these materials until after the time that defendant's reply brief was due. (*See* Dobbs Aff., attached as Exhibit 1 to Defendant's Motion to Strike.) Plaintiff responds that this failure to serve defendant's counsel was caused by an error in the address label to defense counsel. (*See* Plaintiff's Response to Motion to Strike.) The court notes that in plaintiff's first lawsuit against Jimmy Dean, there were discrepancies in the certificate of service signed by plaintiff's counsel and the date on the envelope that enclosed the service copy. (*See* Moore Aff., attached as Exhibit 2 to Defendant's Motion to Strike.) Again, just three weeks before plaintiff was to serve defense counsel with a copy of her response in this second lawsuit, the court entered its June 1, 2001, Memorandum Opinion noting the discrepancy between the certificate of service and the date on the envelope and making clear that plaintiff should make every effort to ensure that counsel for defendant received a service copy timely. Despite this reminder, plaintiff failed to do so.

The evidence before the court establishes that plaintiff's evidentiary materials and plaintiff's brief were untimely filed with the court and untimely served on defendant's counsel. Accordingly, defendant's Motion to Strike Plaintiff's Response is due to be granted.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues

14

exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. V. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. DISCUSSION

### A.   Plaintiff's EEOC Charge Does Not Comply with Title VII

Prior to filing suit under Title VII, a plaintiff must file a Charge with the EEOC and the Charge must be "in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b); *Vason v. City of Montgomery*, 240 F.3d 905, 907 (11th Cir. 2001). Furthermore, the burden lies with plaintiff to produce evidence that all procedural burdens are satisfied as a condition precedent to filing suit. *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982). In *Vason*, the district court granted summary judgment after concluding that plaintiff's letter to the EEOC "was not sworn to under oath or affirmed" as required by statute. 240 F.3d at 906 (citing *Vason*, 86 F.

15

Supp. 2d 1130, 1132 (M.D. Ala. 2000)). Like Cheatom, the plaintiff in *Vason* had received a right-to-sue letter from the EEOC. *Id.* The Eleventh Circuit, following the law of other circuits, held that Title VII "mandates that charges be made under oath or affirmation." *Id.* at 907 (citations omitted). The court affirmed the district court's dismissal of plaintiff's Title VII claims because plaintiff failed to sign her EEOC charge under oath or affirm the charge. *Id.*

In Plaintiff's Response to Defendant's Motion for Summary Judgment, plaintiff asserts that she submitted a signed copy of her charge to the EEOC. (Pl. Response, ¶25.)[2/] However, there is no evidence in the record to support plaintiff's assertion, and plaintiff has failed to produce any such signed copy. The copy of the July 26, 1999, EEOC charge identified by plaintiff in her deposition is not signed by plaintiff, sworn to under oath by plaintiff, or affirmed by plaintiff. (Pl. Depo. at 29-30; 101-102; Exh. 6 to Pl. Depo.) The only copy of plaintiff's July 26, 1999, EEOC charge received by defendant Jimmy Dean was not signed by plaintiff, sworn to under oath by plaintiff, or affirmed by plaintiff. (White Aff. ¶ 11.) Because plaintiff failed to comply with Title VII's requirement to verify her EEOC charge, all conditions precedent to filing suit under Title VII have not been met. Therefore, plaintiff's entire complaint alleging Title VII claims is due to be dismissed and defendant is entitled to judgment as a matter of law.

## B.    Plaintiff Cannot Establish a Claim of Race or Sex Discrimination

Even if plaintiff's EEOC charge complies with Title VII's requirements, the court finds that plaintiff has not established a claim of race or sex discrimination or a claim of retaliation. Plaintiff claims that she was denied an interview for the job of Production Coordinator because

---

[2/] As previously discussed, the court is of the opinion that plaintiff's response to defendant's Motion for Summary Judgment is due to be stricken as untimely. However, even if the court considers plaintiff's response, defendant's Motion for Summary Judgment is due to be granted.

16

of her race and sex.[8/]  In order to prevail on a discriminatory failure to promote claim, a "plaintiff

must establish a prima facie case of race discrimination by showing that: 1) [she] is a member of

a protected minority; 2) [she] was qualified and applied for the promotion; 3) [she] was rejected

despite [her] qualifications; and 4) other equally or less qualified employees who are not

members of the protected minority were promoted." *Alexander v. Fulton County*, 207 F.3d 1303,

1339 (11th Cir. 2000). Plaintiff cannot demonstrate a prima facie case of discrimination because

she cannot demonstrate that she was qualified for the Production Coordinator job.  The ability to

work well with coworkers is one of the critical functions for the effective performance of the

Production Coordinator job because the job involves completing USDA compliance reports with

the assistance of coworkers.  (White Aff. ¶ 2.)  Plaintiff admits that she did not work well with at

least one coworker, and her supervisor[9/] had received numerous reports that plaintiff voiced her

dislike for and her wish not to work with several other coworkers.  (Pl. Depo. at 92-96; Morris

Aff. ¶ 2.)

_____

[8/]In her response to defendant's motion for summary judgment, plaintiff did not address her sex discrimination claim.  The court notes, however, that plaintiff's claim that she was discriminated on the basis of sex is groundless.  All of the individuals awarded the Production Coordinator job are female. (Pl. Depo. at 81.)

[9/]Plaintiff makes the conclusory statement that her former supervisor, Dianna Morris, gave false statements in her Affidavit submitted in support of defendant's Motion for Summary Judgment. (Response ¶ 10.)  However, plaintiff points to no evidence to support this conclusory statement. Rule 56(e) provides: "When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial*." Fed. R. Civ. P. 56(e) (emphasis added).  Plaintiff's conclusory statement falls short of meeting the standard enunciated by the rule.

Plaintiff asserts that defendant's argument that plaintiff did not get along with at least one other coworker constitutes evidence of disparate treatment. (Pl. Response ¶ 12.) Far from constituting evidence of disparate treatment, this evidence demonstrates that plaintiff was not qualified for the Production Coordinator job. Because working well with others is one of the critical functions of the Production Coordinator job, plaintiff has failed to establish a prima facie case of race discrimination because she cannot establish that she was qualified for the job.[10/] As such, her claim is due to be dismissed. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998) (finding summary judgment appropriate where plaintiff fails to demonstrate that she is qualified for job).

Even assuming that plaintiff could establish a prima facie case of race discrimination with respect to this job, plaintiff has not put forth evidence on which a reasonable jury could find that defendant's legitimate, nondiscriminatory reasons for selecting the four individuals for the Production Coordinator jobs were pretext for illegal race discrimination. White, Gipson, Anthony, and Haddock considered the four individuals selected to be the best qualified based on their performance in the interview. (White Aff. ¶ 5.) Plaintiff was not considered qualified because of her inability to work well with coworkers. (*Id.* at ¶ 4.) Plaintiff claims that she was better qualified than the individuals selected for the Production Coordinator job; however, plaintiff points to no admissible evidence[11/] that supports her contention that she was better

_____

[10/]Plaintiff asserts that defendant solicited complaints from her coworkers in order to "cause trouble for plaintiff." (Pl. Response, ¶ 18.) Plaintiff cites generally to her deposition for this proposition, but does not identify the page of her deposition in which there is evidentiary support for this proposition. The court finds no evidentiary support for plaintiff's assertion.

[11/]Plaintiff attached a document to her response to defendant's Motion for Summary Judgment that purports to compare the qualifications of plaintiff with the four individuals selected for the

18

qualified.  Plaintiff's opinion about her qualifications does not rebut defendant's legitimate, nondiscriminatory reasons for denying plaintiff an interview for the Production Coordinator job. Plaintiff also claims that she was more qualified because she had more experience at Jimmy Dean than the individuals selected.  (Pl. Depo. at 89-90, 96.)  However. there is no evidence that years of experience was a consideration in deciding who to promote.  (White Aff. ¶ 5.)  The evidence reflects that the individuals selected were considered best qualified based on their performance in the interview.  (*Id.*)

Plaintiff's belief that she was more qualified fails to demonstrate pretext.  The Eleventh Circuit's precedent "requires a strong showing of disparity in qualifications in order for an inference of discrimination to arise."  *Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2001) ("a plaintiff cannot prove pretext by simply showing that she was better qualified . . . 'Disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.'") (citation omitted).  In this case, plaintiff did not establish any disparities in qualifications between plaintiff and the four individuals selected.  Additionally, White, Gipson, Anthony, and Haddock determined that the four individuals were the best qualified candidates and where "an employer selects the person it believes is best qualified, an argument of pretext ordinarily will

---

Production Coordinator jobs.  (Pl. Response, Exh. 4 A.)  This document is not signed nor identified in any manner and does not comply with the requirements of Rule 56 for evidence in opposition to motions for summary judgment.  Assuming that plaintiff or her counsel created this document, their opinion, unsupported by any evidence in the record, does not call into question defendant's legitimate, nondiscriminatory reason for not interviewing plaintiff for the Production Coordinator job.  Plaintiff was not considered qualified because of her inability to work well with others.  (White Aff. ¶ 4.)  Nothing in this document refutes this legitimate, nondiscriminatory reason.

fail." *Smith v. Horner*, 839 F.2d 1530, 1538 (11th Cir. 1988) (citation omitted).

Plaintiff's argument that she has more experience at Jimmy Dean than the four individuals selected does not rebut defendant's legitimate, nondiscriminatory reason for denying her an interview for the Production Coordinator job - her inability to work well with her coworkers. A "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (citations omitted). Because plaintiff has not offered sufficient evidence to create a genuine issue of material fact regarding whether the defendant's articulated reason is pretextual, the defendant is entitled to judgment as a matter of law on plaintiff's claim that she was denied the Production Coordinator job on the basis of her race.

## C.    Plaintiff is Precluded from Arguing Claims Disposed of in First Lawsuit

Plaintiff contends that she was discriminatorily denied certain promotions to supervisory or management jobs. (Pl. Response ¶ 7.) These claims were part of plaintiff's first lawsuit against Jimmy Dean, Case No. CV-99-B-3271-NW. The court entered a Memorandum Opinion and Order on June 1, 2001, disposing of all of plaintiff's claims in this first lawsuit. In the June 1, 2001, Memorandum Opinion, this court held that plaintiff failed as a matter of law to demonstrate claims of race discrimination with respect to the promotions at issue. Thus, plaintiff cannot reassert these claims in this lawsuit because these claims are barred by the doctrines of res judicata and collateral estoppel. *See Pleming v. Universal-Rundel Corp.*, 142 F.3d 1354 (11th

20

Cir. 1998).

Plaintiff also points to the deposition testimony of Mark Gobble, who testified in plaintiff's first case against Jimmy Dean. This evidence has no relevance to plaintiff's second lawsuit, particularly in light of the fact that Gobble was not involved in any decision that plaintiff claims is at issue in her second lawsuit. To the extent that plaintiff argues that the statements she attributes to Gobble concerning the number of black females in management jobs at Jimmy Dean amounts to statistical evidence of race discrimination, such an argument is flawed because Gobble's statements do not amount to statistical evidence. Most importantly, plaintiff's argument based on Gobble's statements does not rebut defendant's legitimate, nondiscriminatory reasons for the employment decisions at issue in this, her second, lawsuit. Additionally, courts have found that "statistical evidence is generally insufficient to rebut a valid, nondiscriminatory reason for employment action with regard to a particular employee." *Hughes v. Alabama Dept. of Public Safety*, 994 F. Supp. 1395, 1403 (M.D. Ala.), *aff'd*, 166 F.3d 353 (11th Cir. 1998). Plaintiff's citing to Gobble's testimony does not address, much less rebut, defendant's legitimate, nondiscriminatory reasons for any employment decision at issue in this lawsuit.

**D.      Plaintiff Cannot Establish a Claim of Retaliation**

To prevail on a claim of retaliation under Title VII, plaintiff must establish a prima facie case by demonstrating (1) that she engaged in statutorily protected activity, (2) that she was subjected to an adverse employment action, and (3) that the adverse action was causally related to her protected activity. *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). Plaintiff does not establish a prima facie case with respect to the alleged retaliatory acts.

21

### 1.   Denial of Interview for Production Coordinator Job

In addition to claiming that she was denied an interview for the Production Coordinator job on the basis of her race and sex, plaintiff claims that she was denied the interview in retaliation for filing an EEOC charge. Plaintiff can establish the first two elements of a prima facie case of retaliation with respect to the denial of the interview, but cannot demonstrate the third element that the protected activity and the adverse employment action are causally related. In the instant case, neither the timing of events nor any other evidence creates an inference of a retaliatory motive. Plaintiff filed the EEOC charge in October of 1998 yet she was not denied an interview for the Production Coordinator job until June of 1999, eight months later. Courts have routinely held that such gaps in time between the protected activity and the adverse employment action strongly undermine, if not eliminate, any inference of causation. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) (noting that temporal proximity between protected activity and adverse employment action must be "very close" and holding that action taken twenty months later suggests no causality at all); *Maniccia v. Brown*, 171 F.3d 1364, 1369-70 (11th Cir. 1999) (finding no temporal relationship where fifteen months passed) (citing with approval *Conner v. Schnuck Mkts, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (holding four-month lag insufficient)); *Hollins v. Hoechst Celanese Corp.*, 1991 U.S. Dist. LEXIS 11700, **9-11 (S.D. Ala. 1991) (eight month and two month gaps insufficient). *See also Wascura v. City of South Miami*, 257 F.3d 1238 (11th Cir. 2001) (holding that a three and one-half month period standing alone is insufficient to establish a causal connection). Plaintiff's claim is due to be dismissed because plaintiff cannot demonstrate that the protected activity and the denial of the interview for the job are causally connected.

Even assuming that plaintiff can demonstrate a prima facie case of retaliation with respect to the denial of the interview for the Production Coordinator job, plaintiff cannot demonstrate that defendant's legitimate, non-retaliatory reasons for the decision are pretextual. Plaintiff was not considered qualified for the Production Coordinator job because she demonstrated an inability to work well with coworkers, and plaintiff admits that she did not get along with at least one coworker. Also, White, Gipson, Anthony, and Haddock selected the four individuals they considered best qualified for the jobs. Plaintiff has not demonstrated that the legitimate, non-retaliatory reasons for the denial of the interview are pretextual and her claim is due to be dismissed.

## 2.    Morris's Conduct

Plaintiff alleges that her supervisor Dianna Morris retaliated against her in 1999 by assigning plaintiff to a job for one hour that hurt her arm; by moving her three to fifteen times in May 1999 from one production line to another; and by once asking a coworker if plaintiff had upset the coworker. (Pl. Depo. at 36-43; 125-27 .) Plaintiff's filing of an EEOC charge in October 1998 satisfies the first element of a prima facie case of retaliation.[12] With respect to the second element of a prima facie case of retaliation, the Eleventh Circuit has enunciated the standards for determining whether a certain action constitutes an adverse employment action:

> An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or

---

[12]Plaintiff's participation in Jimmy Dean's internal investigation into plaintiff's coworker's complaint about Morris's management style does not amount to protected activity under Title VII. *See EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (holding that participation in internal company investigation unrelated to an EEOC charge does not constitute protected activity).

her of employment opportunities, or adversely affects his or her status as an employee." . . . Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantiality . . . to be cognizable under the anti-retaliation clause."

*Gupta*, 212 F.3d at 587 (citations omitted). The alleged retaliatory actions plaintiff attributes to Morris, considered individually or collectively, fall short of the threshold level of substantiality required to constitute an adverse employment action. Performing differing job duties is part of working at Jimmy Dean, and plaintiff admits that other employees were moved from one production line to another. (White Aff. ¶ 6; Pl. Depo. at 41-42.) Therefore, Morris did not alter plaintiff's working conditions in an adverse way. Assuming that Morris's conduct constitutes an adverse employment action, plaintiff cannot demonstrate a causal connection between her October 1998 EEOC charge and the May 1999 actions because the seven-month lapse in time undermines any inference of retaliation. *See Balletti v. Sun-Sentinel Co.*, 909 F. Supp. 1539, 1549 (S.D. Fla. 1995) (finding six months insufficient for causal connection).

Plaintiff admits that Morris only moved plaintiff when Morris needed plaintiff to work on the production lines. (Pl. Depo. at 39-40, 42-43.) Jimmy Dean production workers frequently rotate from one production line to another. (White Aff. ¶ 6.) Even if plaintiff had established a prima facie case of retaliation with respect to Morris's conduct, plaintiff has not offered any evidence that defendant's legitimate, non-retaliatory reason for moving plaintiff, i.e., the need for plaintiff to work on the production line, was pretext for unlawful retaliation. *See Gupta*, 212 F.3d at 588 ( noting that an employer can assign an employee to perform duties it needs the employee to perform). Plaintiff's claim is due to be dismissed.

24

### 3.    Assigning Pre-op Duties

Plaintiff claims Jimmy Dean retaliated against her by assigning her pre-op duties on the set-up crew in June 1999. Plaintiff acknowledges that she volunteered to work set-up, that she was trained to perform pre-op duties, and that her supervisor assigned plaintiff to these duties for three weeks while one of her coworkers was on medical leave. (Pl. Depo. at 47, 52-53.) Despite these admissions, plaintiff continues to contend that her refusal to perform the assigned duties of pre-op for three weeks while a coworker was on medical leave did not constitute refusal to perform assigned duties because she was performing "voluntary" work. (Pl. Response, ¶ 16.) Requiring plaintiff to perform job duties in which she is trained and in order to fill in for a coworker on medical leave does not reach the threshold level of substantiality to constitute an adverse employment action. Furthermore, plaintiff cannot establish a causal connection between the assignment to pre-op in June 1999 and her EEOC charge in October 1998 because the eight months time passage undermines, if not eliminates, any causal connection. *See e.g., Hollins*, 1991 U.S. Dist. LEXIS 11700 at \*\*9-11 (finding an eight month gap insufficient to establish causal connection). It bears noting that plaintiff was not required to perform these job duties because she refused to perform them and requested that she be removed from the set-up crew. Plaintiff claims that she lost money as a result of being allowed to stop working the extra hour of work in the morning, but admits that she herself *requested* to be released from working set-up. (Pl. Depo. at 158.) Jimmy Dean's honoring of plaintiff's request to stop working overtime cannot be considered retaliation. To the extent that plaintiff claims she should have been allowed to refuse the pre-op duties, plaintiff's notion that an employee can volunteer to work overtime and then refuse to perform the assigned job duties. Plaintiff was not disciplined for her failure to

25

work pre-op[13/] and she has not demonstrated any adverse employment action.  Plaintiff's claim that defendant retaliated against her with regard to the assigning of pre-op duties is due to be dismissed.

### 4.    Reprimand for Threat

Plaintiff has not established a claim of retaliation with respect to her reprimand for making a threat toward her supervisor Dianna Morris.  Plaintiff admits that she made the statement that another supervisor reported as a threat.  Plaintiff does not complain about her transfer from Morris to another supervisor after she made the threat.  Therefore, there is no action surrounding the reprimand that can constitute an adverse employment action.  Assuming the reprimand constituted an adverse employment action, plaintiff cannot demonstrate a causal connection between her October 1998 EEOC charge and the reprimand in July of 1999 because the nine-month lapse in time undermines, if not eliminates, any inference of retaliation.  *See Balletti*, 909 F. Supp. at 1549 (finding a six month gap insufficient).  Even assuming that plaintiff can establish a prima facie case of retaliation with respect to the written reprimand, plaintiff has not offered evidence on which a reasonable jury could find that defendant's legitimate, nonretaliatory reason for issuing the reprimand was pretext for unlawful retaliation.  Plaintiff's claim of retaliation with regard to her reprimand is due to be dismissed.

_____

[13/]Plaintiff was reprimanded for a perceived threat to her supervisor.

26

### 5.    Overtime Work[14]

Plaintiff's allegation that she was denied the opportunity to work overtime[15] one day in

August 1999 falls short of the threshold level of substantiality required to constitute an adverse

employment action. *See Gupta*, 212 F.3d at 588. Even assuming that the denial of overtime on

this one day constitutes an adverse employment action, plaintiff cannot establish a causal

connection between her filing an EEOC charge in October 1998 and the denial of the overtime in

August 1999 because plaintiff cannot establish that the person making the decision about

plaintiff working overtime, Dwight Hubbard, knew that plaintiff had filed an EEOC charge ten

months earlier. *See Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999) (holding

that plaintiff must establish that employer was actually aware of protected activity at time of

adverse action). Assuming that Hubbard was aware that plaintiff filed an EEOC charge in

October 1998, the ten months that passed between plaintiff's EEOC charge and the denial of the

overtime undermines any inference of a retaliatory motive. *See e.g., Maniccia*, 171 F.3d at 1369.

Even assuming that plaintiff can establish a prima facie case of retaliation with respect to

the denial of overtime, plaintiff has not offered evidence to rebut defendant's legitimate,

nondiscriminatory reason for the denial. The evidence before the court the court is that Hubbard

simply made a mistake and forgot to add plaintiff's name to the list of employees available for

---

[14] Plaintiff failed to address the alleged denial of overtime in her response to defendant's motion for summary judgment. Defendant fully briefed these issues, and presented evidence demonstrating that there was no genuine issue of material fact and that it was entitled to the entry of judgment in its favor.

[15] To the extent plaintiff argues that she was denied the opportunity to work overtime based on her race, such claim fails because plaintiff admitted that both black and white employees complained about not being allowed to work overtime. (Pl. Depo. at 119-20.)

overtime. Other employees were not paid for similar supervisor oversights. (White Aff. ¶ 6.) Plaintiff has not offered evidence to rebut defendant's legitimate, nondiscriminatory reason for the denial of overtime and her claim with respect to the denial of overtime is due to be dismissed.

### 6. Attendance Award[16]

Plaintiff's allegation that she was denied a perfect attendance award in retaliation for her filing an EEOC charge does not reach the level of substantiality to constitute an adverse employment action. Plaintiff admits that she missed a day of work to attend a court-ordered mediation and because she missed a day of work, she became ineligible to receive the award. (Pl. Depo. at 37, 152; White Aff. ¶ 10.) All other employees missing work for court-ordered activity are ineligible to receive a perfect attendance award. (*Id.*) Even assuming that plaintiff could establish a prima facie case of retaliation with respect to the denial of the award, plaintiff has not offered evidence to rebut defendant's legitimate, nondiscriminatory reason for the denial. Plaintiff's claim that defendant retaliated against her by denying her an award for perfect attendance is due to be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that defendant Jimmy Dean Foods is entitled to judgment as a matter of law. An order granting defendant's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.

---

[16]Plaintiff failed to address the denial of the perfect attendance award in her response to defendant's motion for summary judgment. Defendant fully briefed these issues, and presented evidence demonstrating that there was no genuine issue of material fact and that it was entitled to the entry of judgment in its favor. Because plaintiff makes no reference to these claims in her response to defendant's motion, plaintiff has conceded that defendant is entitled to summary judgment on all of these claims. *See Resolution Trust*, 43 F.3d at 599.

**DONE** this ___ day of January, 2002.

_Sharon Lovelace Blackburn_
**SHARON LOVELACE BLACKBURN**
United States District Judge